## UNITED STATES v. PEPPER BROS.

### No. 219.

District Court, D. Delaware.

Oct. 16, 1943.

Reargument Denied Dec. 31, 1943.

**164**

Stewart Lynch, U. S. Atty., of Wilmington, Del., for the United States.

Milton E. Sahn and Nathan A. Epstein, both of New York City, for defendant.

LEAHY, District Judge.

An information was presented against defendant for violation of the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix, §§ 904(a) and 925(b). Motions to quash and dismiss the fifth and sixth counts have been filed. These counts charge defendant bought, contrary to Revised Maximum Price Regulation 269,[1] live poultry and paid above the ceiling price in that the birds purchased were Grade B and Grade C, and defendant paid Grade A prices. The violations are alleged to have occurred on or about July 28, 1943. This is a crucial date.

Defendant contends that it has committed no unlawful act for the reasons which I shall detail immediately.

On July 16, 1943, twelve days prior to the acts complained of, the "Taft Amendment" to the Commodity Credit Corporation Act, P.L. 151, 78th Cong., c. 241, 1st Sess., 57 Stat. 566, U.S.Code, Cong. Service, 1943, p. 525, which also amended the Emergency Price Control Act, 50 U.S.C.A. Appendix, § 902, became effective. Defendant argues that by virtue of this amendment [2] all administrative grading require-

---

[1] For the administrative history of Regulation 269, see footnote 1 in United States v. Johnson et al., D.C.Del., 53 F. Supp. 167.

[2] The amendment provides: "Sec. 5. (a) Section 2 of the Emergency Price Control Act of 1942, as amended, is hereby amended by adding at the end thereof the following new subsection:

" '(j) Nothing in this Act shall be construed (1) as authorizing the elimination or any restriction of the use of trade and brand names; (2) as authorizing the Administrator to require the grade labeling of any commodity; (3) as authorizing the Administrator to standardize any commodity, unless the Administrator shall determine, with respect to such standardization, that no practicable alternative exists for securing effective price control with

respect to such commodity; or (4) as authorizing any order of the Administrator fixing maximum prices for different kinds, classes, or types of a commodity which are described in terms of specifications or standards, unless such specifications or standards were, prior to such order, in general use in the trade or industry affected, or have previously been promulgated and their use lawfully required by another Government Agency.'

"(b) The following provision in the National War Agencies Appropriation Act, 1944, is hereby repealed: 'Provided further, That no part of this appropriation shall be used for the promulgation or enforcement of orders requiring grade labeling or standardization of food products, wearing apparel or other processed or manufactured commodities or articles.' "

ments theretofore found in Reg. 269 became void without further action on the part of anyone,[3] unless specifications, standards, or grading of commodities were in general use in the industry affected—or, their use was required by the government agency in order realistically to administer the Act. Concededly, grading of live poultry was not in general use [4] by the industry prior to December 13, 1942. In any event, Reg. 269 contains no reference to prior grading of live poultry as of that date. However, on March 16, 1943, under Amendment No. 6, the Price Administrator established ceiling prices pursuant to grades. But the "Taft Amendment" to the Act, abolishing grades, having become effective on July 16, 1943, it took until September 11, 1943, before the Acting Price Administrator issued "Supplementary Order No. 57" entitled "Supplementary State of Considerations Involved in the Issuance of Revised Maximum Price Regulation No. 269", the effect of which was to add a new sentence to the preamble of Regulation 269 which, now, reads: "In so far as this regulation uses specifications and standards which were not, prior to such use, in general use in the trade or industry affected, or in so far as their use was not lawfully required by another government agency [5], *the administrator has determined, with respect to such standardization, that no practical alternative exists for securing effective price control with respect to the commodities subject to this regulation* [Italics mine]." Sec. 8 F.R. 12551. Hence, defendant says, between the period of July 16, 1943, when grades for live poultry were abolished by the congressional amendment to the Emergency Price Control Act (Sec. 2(j), and September 11, 1943, when the Acting Price Administrator exercised the grant of power given him by Congress by finding that it was impossible to administer the Act without providing for standardization and grading of certain commodities, there existed a limbo-period when live poultry could legally be sold without the administrative denominations of Grade A, Grade B or Grade C birds.

In the face of this fact, the government still contends the effect of defendant's motion is to ask the court to consider the validity of Reg. 269, as it was prior to July 16, 1943, and as it was amended by Supplementary Order No. 57. This the court must not do, suggests the government, because under Sec. 204(d) of the Act no court, except the Emergency Court of Appeals and the Supreme Court upon review of its judgment, shall have jurisdiction to consider the validity of any regulation issued under the Act. Lockerty v. Phillips, D.C., 49 F.Supp. 513, affirmed 319 U.S. 182, 63 S.Ct. 1019, 87 L.Ed. 1339. The government's subsidiary argument, in support of the two counts found in the information, is that, even in the absence of Sec. 204(d), defendant, upon established principles of administrative law, is not permitted to challenge the validity of Reg. 269, as a normal consequence of its failure to exhaust its administrative remedies. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S. Ct. 459, 82 L.Ed. 638; Bradley v. City of Richmond, 227 U.S. 477, 33 S.Ct. 318, 57 L.Ed. 603; Lehigh Valley R. Co. v. United States, 3rd Cir., 188 F. 879.

Principles of administrative law are acknowledged. And the advantages and necessities of the present review system under the Emergency Price Control Act are obvious, viz.: (1) flexible administrative control of a price control program in wartime; (2) uniform and uninterrupted operation of this program; (3) a simplified enforcement mechanism for such price control; and (4) a judicial review by an ex-

---

[3] The Office of Price Administration then announced the repeal of grade labeling requirements. See Release, Aug. 25, 1943, OPA—2981, which stated: "Grade labeling requirements which were written into a score of maximum price regulations to protect the buyer where ceilings depend on the quality grade of an article have been repealed, the Office of Price Administration announced today, in a summary of the action taken to conform to the mandate of Congress.

"The Taft Amendment to the Commodity Credit Corporation Act, which became Section 2(j) of the Emergency Price Control Act, as amended, prohibits OPA from requiring grade labeling."

[4] See "1942 Report of the United States Department of Agriculture, Division of Agricultural Marketing Service, Submitted to Department of Markets of New York City."

[5] The only other government agency which could possibly require grading of live poultry is the United States Department of Agriculture; it has promulgated no such requirement. Cf. footnote 4, supra.

pert court highly qualified to deal with complex economic and legal issues.

Without seeking in any way to attack Reg. 269, defendant by its motion simply shows that the mere issuance of Supplementary Order No. 57 demonstrates that grading of live poultry between July 16, 1943, and September 11, 1943, was not legally provided for in the regulation, for the reason that the grading requirements contained in the schedules in the regulation after March 26, 1943, were repealed as of July 16, 1943, by virtue of the amendment of Sec. 2(j) of the Emergency Price Control Act. Manifestly, at the time of the acts complained of—July 28, 1943—there were no ceiling prices established pursuant to grading in the light of the last amendment to the Act.

■■ The finding in favor of defendant does not poach on the preserves of the Emergency Court of Appeals because I am not passing on the *validity* of any regulation promulgated under the Act. The word "validity" is to be given its ordinary dictionary meaning since there is no persuasive evidence that Congress used it in a different or unusual sense when it enacted Sec. 204(d) of the Act. Boston Sand & Gravel Co. v. United States, 278 U.S. 41, 48, 49 S.Ct. 52, 73 L.Ed. 170. I simply find there was no regulatory mandate in existence at the time of defendant's acts complained of, the violation of which, it is charged, constitutes a crime.

The view is rejected that my conclusion is, in effect, a judicial determination of the validity of Reg. 269 by indirection. To say this court is without jurisdiction to find that a defendant is charged with a crime without warrant, is to insist upon an interpretation of the scope of the Emergency Court of Appeals' jurisdiction which was never intended by Congress, in view of the trial court's traditional function in criminal matters to look at the obstinate fact—to-wit—what is the crime which the defendant is alleged to have committed? An interpretation of a statute together with its administrative regulations which holds that the nisi prius court is powerless to determine whether there exists a crime for

which a defendant must stand trial, is obviously unsound.

Counts 5 and 6 of the information are stricken.

On Motion for Reargument.

The government moved for reargument because I stated in the above opinion that "Concededly, grading of live poultry was not in general use by the industry prior to December 13, 1942." The government and OPA attack this statement and urge that if such a concession had been made it was made in error for the grading of live poultry was in general use during that period.

■■ I need not decide that issue now because the information is defective notwithstanding the truth of the contention urged by the government. The Taft Amendment to the Commodity Credit Corporation Act (U.S. Code, Cong. Service, 1943, p. 525), which also amended, in part, the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 902(j), became effective on July 16, 1943. This was prior to the occurrence of the offenses upon which the information was based. By virtue of this amendment the administrative grading requirements theretofore found in Reg. 269 became void, unless specifications, standards, or grading of commodities were in general use in the industry affected—or, their use was required by the government agency in order to administer the act effectively.

Unless either one of these operative facts is present, grading of poultry would not, therefore, constitute a crime. The two counts in the information are defective for failure to allege the existence of either of these operative facts. While the facts alleged in the counts may be true, yet no crime has been committed unless grading was required by administrative order or unless grading was in general use in the industry. The two counts in the information are accordingly defective for failure to allege these facts sufficiently. United States v. Johnson, D.C.Del., 53 F.Supp. 167, and cases cited therein.

The petition for reargument is denied.